CYRIL V. NICHOLS, Respondent, *v.* WHARTON, INC., Appellant.

First Department, July 13, 1917.

**Contract — action on breach of contract between actor and moving picture company — evidence.**

In an action to recover damages for the breach of a contract made between the plaintiff's assignor, a moving-picture actor, and the defendant, the plaintiff claimed that his assignor was guaranteed a four weeks' engagement and was to be given the star part, while the defendant took the position that the agreement had been to employ the plaintiff's assignor for one week and as much longer as would be necessary to finish the picture.

Evidence examined, and *held*, sufficient to support a verdict for the plaintiff.

DOWLING, J., dissented, with opinion.

APPEAL by the defendant, Wharton, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 14th day of November, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 1st day of December, 1916, denying defendant's motion for a new trial made upon the minutes.

*William G. Phlippeau,* for the appellant.

*Paul N. Turner,* for the respondent.

SMITH, J.:

The plaintiff is the assignee of Edwin Hunter Arden. He here sues to recover damages for the breach of a contract made between said Arden and the defendant. The defendant was engaged in making moving pictures. One Wharton, representing the defendant, made the contract with Arden upon which this action is brought. The conversation by which that contract is claimed to have been made is related by Arden as follows: " We greeted each other, and he said, ' Will you do a picture for me? ' I said, ' Yes. When? ' He said, ' As soon as you finish Simon the Jester.' He said, ' Do you know when that will be? ' I said, ' In about ten days or two weeks.' I said, ' What is the picture that you purpose doing? ' He said, 'Hazel Kirke.' I said, ' What do you want me to play? ' He said, ' I want you to play Squire Rodney.' I said, ' You will star me of course? ' And he said, ' Certainly.' I said, ' How can you make Squire Rodney a star part? ' He said, ' We will write the scenario so that it will be made a star part. Our firm is agreed that it is the only sympathetic male part in the piece, and we purpose making it *the star part* and getting the sympathy.' I said, ' Very well, if you do that.' He said, ' That is what we are going to do, and if you will engage with us you can do anything you like with the scenario.' I said, ' What salary will you offer? ' He said, ' The same salary that you are working for now in Simon the Jester, $750 a week.' I said, ' I must have more money for expenses; the picture being made in Ithaca, I must have a certain amount for expenses in Ithaca away from my home, away from New York.' He

said, ' I will give you $25 a week extra for your living expenses.' I then asked, ' Who is going to do Hazel Kirke? ' He said, ' We have not fixed upon a woman yet, have you any suggestion? ' I said, ' Not at present, but I will put my thinking cap on, and if I can think of any people for that role, any women, I will mail you a list of them.' I said, ' How long will the picture take? ' He said, ' About four weeks.' I said, ' About four weeks? ' He said, ' Well, I will guarantee you four weeks.' He said, 'Will you do the picture?' I said, ' I will,' and we shook hands on it."

When Arden was through with the work in which he was then engaged, the defendant was not ready to make this picture and desired Arden to postpone the time. Arden wrote back that he had saved the time up to the first of September for them. The defendant afterwards fixed the time as of the first of August, at which time defendant was not ready to begin, and upon August sixth telegraphed Arden: " We are endeavoring to get cast together for Hazel Kirke for August 16. Are you available contract as per our last letter to you. Wire Answer." Upon August seventh Arden replied: " Available to begin August sixteenth as sole star according to contract to play Squire Rodney in Hazel Kirke expect customary transportation both ways." On August eighth the defendant replied: " Your telegram and letters received. You refer to contract of which we have no knowledge. Impossible to make you sole star, give you dressing room alone or to engage you for longer period than your services will be rendered in making the picture, which will be one week guarantee and from day to day thereafter as long as your services will be required in the picture. If agreeable to you please wire your acceptance Monday, to-day." That closed the correspondence.

After the making of this contract to which Arden testified, the defendant took the ground that the agreement had been to employ Arden for one week at $750 and as much longer as would be necessary to finish the picture. Arden at all times claimed that he was guaranteed a four weeks' engagement, and that question was the main question litigated upon the trial and submitted to the jury, which found with the plaintiff upon, as we think, abundant evidence. At the

close of the charge the defendant's attorney requested the court to charge that if the jury found the defendant did not agree to accept Mr. Arden as sole star, the defendant is entitled to a verdict. No objection was made, and that was charged. The defendant further requested the court to charge " That if the jury find that Mr. Arden refused to perform unless he was figured as sole star, the verdict should be for the defendant." That was consented to, and charged. If that charge be strictly interpreted, it would amount to a direction of a verdict for the defendant, because by the telegram sent by Arden to the defendant upon August seventh, he made it as a condition to his fulfillment of the contract that he be the sole star. Read, however, in connection with the former request, the jury could not have misunderstood the court that in order for the plaintiff to recover they must find that the contract provided that Arden was to be made the sole star. The defendant's contention here is that there is no evidence of any such agreement.

There was no evidence given upon the trial as to what would constitute in theatrical parlance a " sole star " in a play of this nature. To the lay mind, representing a part as the dominant and most conspicuous character in a play would seem to constitute that part a sole star part. The contract sworn to by Arden represented the defendant's agent as stating, " Our firm is agreed that it is the only sympathetic male part in the piece, and we purpose making it *the star part* and getting the sympathy." This would seem to indicate the intention of the contracting parties that the part which was to be played by Arden was to be made the most conspicuous and dominant part of the play, and in the absence of evidence as to what is the technical use of the phrase, would seem to represent an engagement on the part of the defendant to make the part a " sole star " part. Moreover, the contract drawn up by Arden and sent to the defendant, but which was never executed, had in it the provision that Arden's part was to be a sole star or feature in the aforementioned production, and in the letter inclosing the contract it was stated that the contract was modeled upon another contract between the parties in reference to another picture named " The

Exploits of Elaine." It is apparent from the record that the differences between Arden and the defendant did not arise from this branch of the case, but from their contention as to the guaranteed time of employment.

The judgment and order should, therefore, be affirmed, with costs.

CLARKE, P. J., and PAGE, J., concurred; DOWLING, J., dissented.

DOWLING, J. (dissenting):

I dissent upon the ground that the evidence discloses without dispute that the plaintiff himself breached even the contract that he claims was made, by insisting upon being sole star in his characterization of " Squire Rodney " in the play of " Hazel Kirke," which had never been agreed to be done and which was impossible to accomplish because of the nature of the play and the character he was to assume therein. This demand he made by his telegram of August seventh. Even under his own version of the agreement, he was to be male star, but not the sole star, and this is made plain by his cross-examination. That he was not entitled to stand upon this demand to be sole star was admitted upon the trial, for when the defendant's attorney asked the court to charge " that if the jury find that Mr. Arden refused to perform unless he was figured as sole star, the verdict should be for the defendant," the plaintiff's attorney consented to the charge and the court did so charge. As Arden's telegram of August seventh was a demand that he be the sole star, and as he refused to proceed with his contract when defendant declined to recognize him as sole star, under the court's charge, defendant was entitled to the direction of a verdict. Furthermore, Arden never tendered his services under the contract, never reported for duty and did not seek to explain or excuse his failure so to report, nor did he ever render any services under the alleged contract.

Judgment and order affirmed, with costs.